## COOK *v.* STATE.

Opinion delivered February 4, 1924.

1. CRIMINAL LAW—SPECIFIC OBJECTION TO LANGUAGE OF INSTRUCTION.—
   Where an instruction is not inherently erroneous, the attention
   of the court should be drawn to any objection which goes merely
   to the language of the instruction.

2. WITNESSES—CROSS-EXAMINATION OF STATE'S WITNESS.—In a prose-
   cution for murder it was not error to refuse .to permit defend-
   ant to ask a State's witness concerning a threat against defend-
   ant by deceased, where such matter was not relevant to the
   examination of the witness in chief, and defendant refused to
   make the witness his witness.

3. HOMICIDE—THREATS TO KILL DEFENDANT'S DAUGHTER.—It was not
   error in a murder case to exclude testimony of defendant's
   daughter that deceased had threatened to kill her.

4. HOMICIDE—ADMISSIBILITY OF THREATS.—Where it was a question
   as to who was the aggressor in a conflict resulting in a homicide,
   it was error to exclude evidence of threats to kill defendant,
   recently made by deceased.

Appeal from Baxter Circuit Court; *John C. Ashley*,
Judge; reversed.

*W. T. McCabe*, for appellant.

*J. S. Utley*, Attorney General, *John L. Carter, Wm.
T. Hammock, Darden Moose* and *J. S. Abercrombie*,
Assistants, for appellee.

WOOD, J. F. M. Cook, appellant, hereafter called
Cook, was indicted by the grand jury of Baxter County,
Arkansas, for the crime of murder in the first degree in
the killing of one Jasper Wilson, on or about the 24th of
August, 1922, in Baxter County. He was tried on the
15th of September, 1923, and convicted of murder in the
second degree, and sentenced, by judgment of the court,
to imprisonment in the State Penitentiary. for a period of
fifteen years. He appealed from that judgment.

The facts are substantially as follows: One Jim
Wilson was the tenant of Cook, on a farm in Baxter
County. Jasper Wilson was his stepson. The Wilsons
had the place rented for the year 1922. Their lease had
not expired on the 24th of August, 1922. There were two

barns on the place that the Wilsons rented. Cook had taken possession of what is called, in the record, "the upper barn." This had aroused the animosity of the Wilsons against Cook. On the morning of the 24th of August, 1922, the elder Wilson was preparing to go bee-hunting, and took his gun along, as Mrs. Wilson testified, to kill a squirrel. Jasper Wilson was taking a cow to the dipping vat. Cook had brought a load of hay to put in the lower barn. Wilson forbade him, and Cook's wagon was stopped in the gate. Jim Wilson went back to his house for his gun, and Cook went back and called to one Celia Everidge, who was living with Cook, to bring his gun. After they secured their guns they returned to the lot where the wagon of hay was standing, and there the fatal rencounter occurred, in which Cook killed the two Wilsons. When Cook returned, Mrs. Mary Wilson, wife of Jim Wilson, stated that she was present. She had anticipated trouble, and had gone to the barn. She saw Cook returning, running down the hill as fast as he could. She hollered to him to stop and not have trouble, but when he got as close as he wanted to he threw his gun to his face and fired at her husband. When she saw him throw his gun to his face, she looked around to see where her husband was, and he was raising his gun to his face. They both fired about the same time. Then she looked and saw her stepson standing back of her. Another shot was fired. She was so addled she did not realize what was going on and didn't know who fired that shot, but, when she came to herself, she looked and saw her husband staggering down the hill, and falling. She went to him and commenced working with him. She didn't know that any more shots were fired. She remembered that she had seen Jasper, and called to him, but he didn't answer. Then she started back towards the barn, and saw him sitting against the fence, with blood running out of his mouth and nose, and she knew that he was killed, too, though he was not yet dead. After her husband fell, Cook came into the lot and walked by, and she told him that he had killed her husband. He replied, "I am shot,

too." He went on towards the barn, in the direction of where she found Jasper Wilson; didn't know whether he had shot the boy before or after he passed. Jasper Wilson was eighteen years old. They had had no trouble to speak of before. When she found the boy, there was a shotgun close by, sticking through a crack in the fence, two or three feet away from him. The lot was grown up in weeds, and the boy was standing by the path, and it was low there, so that the weeds hid him from his waist down to his feet. Witness' husband had a Winchester at the time he fired the shot. He had just one shell.

It was shown that two empty 12-gauge shotgun shells were found at the front end of the wagon, indicating where the party stood who did the shooting. Also there were two empty shells at the back end of the wagon. The weeds had been cut from the hind end of the wagon to the point where Jasper Wilson's body lay. His body was found at the back side of the lot, east of the barn, and no shells were found in that vicinity that indicated any shooting. It was found where one load of shot had gone through the weeds and cut them down; there was the sign of blood where Jasper Wilson was standing, and the sign of blood, showing that he went toward the trail way where he fell. Young Wilson was shot in the back, and also in the head. He was lying at the fence, with his head shot all to pieces, and his hat was shot off, and on the opposite side from him was a shotgun, loaded, with one shell in it. He was shot in the left side and in the back part of his head. It was thirty-six yards from where young Wilson was to the wagon where they found the two shotgun shells which had been fired. The shot found on top of the rail fence were in line with the place where the boy fell and the point where they found the shells at the wagon.

There was testimony on behalf of the State tending to prove that, on the morning of the killing, Cook was talking to a bunch of men, and said, "Me and the old man got into trouble, and he shot me and I shot them." He further said, "I have shot those people, and I want

you boys to go over there and take care of them." He didn't state who they were, but the witnesses knew that he had reference to the Wilsons, and went over there, and found the Wilsons dead. Cook further said, in the same conversation, "They come out on me with their guns, and the boy popped out of the weeds with a gun and shot me in the eye with a twenty-two, and I went back to the barn and hollered to Celia to bring my shotgun, and she damn sure brought it."

Another witness for the State testified to the effect that he saw Cook, on the day of the killing, after the same had occurred, and Cook told witness that he (Cook) went to put a load of hay in the barn, and Wilson said, "I will kill you before I let you put the hay in the barn," and dared him to put it in the barn, and he (Cook) went after his gun, and he "damn sure used it." This witness also said that he heard Cook tell Doctor Matthews, when the doctor was treating his wound, as follows: "Just as I come around and raised my gun he raised his gun, and we both shot at the same time, or we both fired about the same time." Cook was asked, in this conversation, how the boy came to shoot him, and he replied that the boy told him he had killed the old man, and not to shoot any more, and the boy started to shoot, and he shot the boy.

Dr. Smith testified that he treated Marion Cook and Celia Everidge for injuries about the 24th of August, 1922. He asked Cook what was the trouble, and Cook said, "I have been shot." He also said that he killed a couple of men, and that he had to do it. Witness found a gunshot wound just inside the left eye and one about his right eye. He took out a shot from one of the wounds, and it appeared to be a No. 4 squirrel shot. Witness stated that, from the nature of the shots and the direction from which they entered Cook's face or head, Cook could not have been looking directly at his assailant at the time the shot was fired that inflicted the wounds. Celia Everidge was also shot.

Celia Everidge, who lived on the place with Cook, testified to the effect that Cook and one Brewer, on the

morning of the killing, had taken a load of hay to the lower barn, and had been gone only a few minutes when Wilson came by their camp, muttering and growling. He looked at witness for a second and said, "I am getting tired of looking at that damn son of a b——, and I will settle with him this morning," and went on in the direction of where Cook and Brewer were. A few minutes later she heard Cook hollering, and supposed he was calling her to come on and go home, and she started and looked up, and saw his gun, and picked it up and started down the hill to where they were, and heard them talking, and knew from the way they were talking that there was going to be trouble. She hurried on to try to stop it. When she got to Cook, he grabbed the gun out of her hand, and stated that Wilson was going to kill him. She and Brewer and Mrs. Wilson begged Wilson not to kill Cook, and Wilson repeated the words just used. The first thing witness knew, the shotgun the young man had was right on her. He was over to the right of the wagon, and standing where no one could see him except witness. Cook could not see the boy from where he was. When the boy shot, she fell, and, as she got up, they shot from the weed thicket from the left of the wagon, and witness heard the gunshot and saw Cook falling, and he got up and wiped the blood out of his face, and Wilson came over to the back end of the wagon, and, as he came around, Cook was getting up, and, as Wilson got to the back end of the wagon and had his gun to his face, Cook brought his gun up and they both fired at once. Cook stood there, and Wilson ran around back of the wagon and fell. All at once Jasper raised up in the weed thicket and shot Cook, and then squatted down. As the witness went to assist Mrs. Wilson she saw the young man kicking and scrambling by the fence on the ground, and as she came back he was sitting or lying up against the fence, and holding his gun in his hand, with the muzzle pointing up.

Witness Mary Cook, the daughter of Cook, stated that she knew Jim and Jasper Wilson. Jasper Wilson

made some threats against the life of Cook. She went to see if the mules were wasting the crops, and could not find them, and she went to see Wilson to see if he had seen them, and he came out of the house and said, "I intend to kill old man Cook if powder and lead will burn," and Jasper Wilson said the same thing. She told Cook about this threat a short time before the killing.

Cook himself testified that, if he killed Jasper Wilson, he did not know it. His testimony was to the effect that he didn't see Jasper Wilson there that morning, and had not seen him since the day before. He stated that old man Wilson had threatened to kill him that morning, and his testimony substantially corroborates the testimony of Celia Everidge and Thad Brewer as to what occurred at the time of the fatal rencounter; that he and Wilson fired at each other about the same time, and, as the old man went down, he (Cook) was looking to see where he was, and a gun fired over in the weeds and hit him, and he looked and saw the muzzle of the gun sticking up out of the weeds, and he aimed low down, about where he thought the stock of the gun would be in the weeds, and shot twice, and then turned and ran up the hill.

Cook offered to prove by Green Treat the following: "I met two parties along about the last of July, 1922, near Marion Cook's place, who said they lived on Marion Cook's place; that the young man and the father were together. The young man stated they lived on Marion Cook's place and renting land from him, and stated that if Marion Cook fooled with him he would kill him, and that the older man, who was present with the boy, said to the boy for him to hush up—that, if he was going to do anything like that, it was best for him not to be talking that way. This conversation took place a few weeks before the killing of James and Jasper Wilson. Also that witness, a few days before the killing, saw Marion Cook in Big Flat, and told him that these parties had threatened to kill him, and further, that witness would state that he was near the Marion Cook place, doing some min-

ing work, and just passed through Marion Cook's field, where this killing occurred, and that he didn't know what these parties' names were, but that he met an old man about sixty years old and a boy whom he judged to be about twenty years old, and that the older man addressed the younger man as his son."

The court would not permit the offered testimony to be introduced. Cook duly excepted to the ruling of the court.

The court instructed the jury on the law of murder, manslaughter, and self-defense. Only a general objection was saved to the instructions. None of the instructions were inherently erroneous, and there was no reversible error in the giving of same. The attention of the court should have been drawn to any objection which goes merely to the language of the instructions. There was no reversible error in refusing to allow the witness, Mary Wilson, to testify that Jasper Wilson told her "to tell that red-headed son of a b———, Marion Cook," not to show himself on the place, or "we will kill him." The court would not allow this testimony to be introduced unless the defendant made Mary Wilson his own witness. The court ruled correctly that this was original testimony, not responsive to the examination of the witness in chief, and it was only proper for the appellant to elicit such testimony by making the witness his own, which he failed to do. To avail himself of this testimony, appellant did not have to reintroduce the witness, but appellant should have made the witness his own for the purpose indicated.

There was no error in excluding from the jury the testimony of Mary Cook, to the effect that Jim Wilson ran at her with a knife, and threatened to pull her off her mule and kill her. The appellant was on trial in this case for the killing of Jasper Wilson, and this testimony of Mary Cook was not relevant to the issue being tried.

The court erred, however, in refusing to allow the proposed testimony of Green Treat to be introduced. The court should have permitted the testimony of this wit-

ness, which the appellant offered as set forth in the record, to go to the jury. The foundation for its introduction was sufficiently laid. It was shown to the court that the threat which the appellant thus offered to prove was made by Jasper Wilson against the life of the appellant. The testimony was not susceptible of any other conclusion. The description of the parties was sufficiently accurate to identify the elder person as Jim Wilson and the younger one as his son, Jasper. Such being the case, the testimony was competent, because it was an issue in the case as to who was the aggressor in the fatal rencounter, and in all such cases threats are admissible when they tend to explain or palliate the conduct of the accused. They are "circumstantial facts which are a part of the *res gestae* whenever they are sufficiently connected with the acts and conduct of the parties so as to cast light on that darkest of all subjects, the motives of the human heart." *Palmore* v. *State,* 29 Ark. 248; *Burton* v. *State*, 82 Ark. 595, and other cases there cited.

The above proffered testimony was, at least, sufficient to go to the jury to determine whether Jasper Wilson made the alleged threat.

The alleged errors predicated upon the remarks of the prosecuting attorney in argument aré not likely to occur again, and it is unnecessary to comment upon these. For the error indicated the judgment is reversed, and the cause remanded for a new trial.